831 So.2d 749 (2002)
Michael R. NEWBERRY, Appellant,
v.
Brenda L. NEWBERRY, Appellee.
No. 5D02-362.
District Court of Appeal of Florida, Fifth District.
November 15, 2002.
*750 Marcia K. Lippincott of Marcia K. Lippincott, P.A., Lake Mary, for Appellant.
James E. Shepherd of Shepherd, McCabe and Cooley, Longwood, for Appellee.
COBB, J.
On November 12, 1998, the appellant, Michael Newberry, filed a petition seeking modification of a final judgment of dissolution in regard to the primary residence of his son, Levy, born November 9, 1989. Two other minor children of the parties, Shayna (then seven years of age) and Ashley (then sixteen years of age), were also residing with their mother, Brenda Newberry, at that time. Michael's petition also asked for a commensurate reduction in child support in the event that his request for residential custody of Levy was granted.
Brenda Newberry, Michael's former wife, answered the petition, but she did not file a counter petition or ask for affirmative relief. While the modification petition was pending during the year 1999, the parties entered into two mediation agreements which provided that Ashely would live with Michael while Levy and Shayna would continue to live with Brenda; the parties could not agree on child support.
Prior to trial in July, 2001, Michael submitted a child support guideline worksheet which contained the following calculations:

Father's net monthly income: $ 4,775.48
Mother's net monthly income: + 1,982.68
 __________
Combined Income: $ 6,758.16
Total Monthly Obligation: $ 1,856.00
Father's Share: $ 1,284.47
Mother's Share: $ 571.33

Michael filed an amended petition seeking a change in residence for Levy and Shayna, essentially challenging the mediation agreement. Ashley, who reached majority in June 2000, had begun living with her father in June 1999, although Michael had not requested a reduction in his child support payment relative to her.
On November 6, 2001 the trial court entered final judgment denying the father's petition for modification, but increasing child support from $850.00 per month (which had been for three minor children) to $1,284.47 (for the two remaining minor children), and made the support award retroactive to the date of the filing of the father's original petition in November, 1998. This retroactive ruling resulted in an arrearage of $13,226.22.
We agree with the father's argument, succinctly summarized in his brief as follows:
The parties went to court on the father's modification petition that sought a change in the residence of the parties' three children with an accompanying change in child support, and nothing more. After the trial court denied the change in residence, it increased the child support the father had previously been ordered to pay without any pleading request for that relief. Moreover, this increase was ordered retroactively for children who were not involved in *751 the father's initial petition. This increase was also ordered retroactively despite the lack of evidence that the children's needs had increased. And this 2001 increase was ordered retroactively despite the fact that at the time the father's petition was filed (1998) the mother earned more than the father, and the father's 1998 income was substantially less than his 2001 income. The father was totally denied due process, and reversal is required.
A trial court lacks jurisdiction to enter any judgment on an issue not raised by the pleadings. Cortina v. Cortina, 98 So.2d 334 (Fla.1957). For example, a petition for contempt for nonpayment of child support does not give a court the power to reduce court ordered child support. Hammond v. Hammond 492 So.2d 837 (Fla. 5th DCA 1986). In this case, the father moved to modify the dissolution decree by changing the primary residential custody of the parties' children from the mother to himself. In addition, he requested an appropriate adjustment downward of child support to reflect the new living arrangements in the event his petition was successful. The mother made no affirmative requests of her own. Nevertheless, the trial court found the father's mere mention of child support permitted the court to increase the child support paid by the father. Moreover, the number of children covered by the prior order had been reduced from three to two[1]. This ruling by the trial court was clearly error.
We reject any claim that the issue was tried with the implicit consent of the parties. Immediately after the trial court announced that it was increasing the former husband's child support obligation and making the increase retroactive, the former husband's counsel stated "I must object to a couple of things for the record". The trial court responded:
Well, you don't have to object on the record, sir. You can object in Daytona, 38 miles north after I have entered the final judgment. Those are my findings of fact. That is my judgment.
We cannot say that the former husband consented to trial of this issue where the court rebuffed his effort at interposing his objections.
The trial court in this case blatantly violated the most basic of constitutional rightsdue process of law. The father was given no notice or opportunity to be heard on the distinct issue of increasing the amount of child support he paid, much less being given credit for child support paid for Ashley while she was living with him pursuant to a mediation agreement between the parties. The trial court's judgment increasing child support, both prospectively and retroactively, is reversed.
REVERSED AND REMANDED.
PLEUS, J. concurs.
SHARP, W., J. concurs in part and dissents in part, with opinion.
SHARP, W., J., concurring in part and dissenting in part.
I agree that appellant should receive a credit for the child support he paid appellee for Ashley after he filed his petition to modify.[1] I also agree that the retroactive *752 child support award should not have been calculated on appellant's highest current income, but rather the lesser sum originally set.
However, I disagree that the trial court did not have jurisdiction to hear the issue of child support for two reasons. First, I believe that, under present statutory law and rules of procedure, child support must be recalculated every time it comes before the court. Second, the record establishes that this issue was raised by appellant during and before the hearing, and tried by implied consent pursuant to Florida Rule of Civil Procedure 1.190(b).[2]
The parties were divorced in 1996, after entering into a settlement agreement, which was incorporated in the final judgment. Appellee was designated the primary residential parent of the parties children, three of whom were minors. Appellant's child support obligation was set at $850 per month for the three children.
In November of 1998, appellant filed a petition for modification to obtain primary residential custody of one of the children, Levy, and to modify his child support obligation to "reflect the new living arrangement." Subsequently, the parties mediated the dispute and agreed that a different child, Ashley, would make her primary residence with appellant. However, the parties could not agree on the amount of child support, and that issue was left to be determined in a later proceeding. In August of 2000, appellant filed another amended petition to modify which would reflect Ashley's change in residence. He again asked that his child support be modified to "reflect the new living arrangement" regarding Ashley, and continued to seek primary residential custody of Levy.
Appellant's argument here and below in his motion from relief from judgment, is a technical one and can be summarized as follows: The appellee did not formally request modification of child support;[3] and appellant requested modification only for any child for whom he was to be the primary residential parent. It appears that what appellant actually sought was a percentage reduction in child support, from his original child support obligation, for any child or children who resided with him; i.e., that the $850 child support ordered in the 1996 divorce decree be reduced on a percentage basis for a child (or children) living with him.
What appellant did, however, was to comply with the Florida Family Law Rules of Procedure 12.285(f) and 12.902(e) and file his child support guidelines worksheet based on the parties current financial status, calculating the child support obligation based on those figures. Further, during the hearing he asked for a recalculation of child support, based upon the parties' current earning figures, and for a credit for child support paid to appellee for Ashley (who was living with him) based on the parties' 1999 figures, even though he had paid child support based on the 1996 figures. The effect of these actions, if permitted, is that child support would be modified based on the parties current income *753 figures for any child living with appellant; but for any child residing with appellee, there would be no modification. This inequitable argument is a "heads I win, tails you lose" proposition.
In view of the requirement that parties must file child support guidelines worksheets based on their current incomes whenever child support is at issue, and those worksheets require calculation based on the parties' current income, I think that the pure reduction option of the past, without reference to the parties current earnings or the periodically updated child support amounts, is a thing of the past. Rather, each time child support comes before the court, recalculation, based on the current financial status of the parties, is required. See Rule 12.285(j), 12.902(e). The trial court must apply the guidelines as amended to a case that is pending when an amendment becomes effective. Rainsberger v. Rainsberger, 819 So.2d 275 (Fla. 2d DCA 2002).
Florida Family Law Rule of Procedure 12.285(j) requires the worksheet and provides:
Child Support Guidelines Worksheet. If the case involves child support, the parties shall file with the court at or prior to a hearing to establish or modify child support a Child Support Guidelines Worksheet in substantial conformity with Florida Family Law Rule of Procedure Form 12.902(e). This requirement cannot be waived by the parties. (emphasis added).
The worksheet requires the parties to disclose their present net monthly income, and the number of minor children "common to the parties." See Rule 12.902(e). A review of the worksheet reveals that child support is calculated globally, i.e., for all children common to the parties. There is no provision to calculate child support for some, but not all, of the parties' common children. The child support guidelines must be utilized when calculating child support in a modification proceeding or it is reversible error. Locke v. Locke-Mixon, 691 So.2d 649 (Fla. 3d DCA 1997).
Furthermore, section 61.30 is premised on the concept that the amount of child support is a global issue, calculated on all the common dependent children of the parties, as well as both parents' incomes. No provision exists which would warrant varying the amounts of child support based on which parent has primary custody of a child. Rather, it is presumed that the costs to support the children are the same.
Hammond v. Hammond, 492 So.2d 837 (Fla. 5th DCA 1986), relied on in the majority opinion, is not applicable here, as Hammond was decided prior to July 1, 1987, the effective date of the child support guidelines. The guidelines are only applicable to petitions filed after that date. Martinez v. Garcia, 575 So.2d 1365 (Fla. 3d DCA 1991). Thus Hammond is not helpful in analyzing child support issues under the guidelines.
The result in this case is due to the fact that appellant's income had increased substantially between the time of the final judgment and the most recent modification petition, while appellee's income had decreased, and appellant was required to comply with the current statute and rules of procedure. That is the reason appellant's child support obligation was increased, notwithstanding the fact that he obtained primary residential custody of one of the three children.
Further, Florida Rule of Civil Procedure 1.190(b) makes provision for matters not raised by the pleadings to be tried by implied consent and provides:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all *754 respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion ... but failure so to amend shall not affect the result of the trial of those issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform to the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice the objecting party in maintain an action or defense upon the merits. (emphasis added; emphasis in original)
Pursuant to Rule 1.190(b), the trial court properly considered the global child support issue because it was raised by appellant, and discussed in this hearing.
Matters not pled may be tried by implied consent pursuant to Rule 1.190(b) when the other party has been sufficiently apprised of the issue. See Whight v. Whight, 635 So.2d 135 (Fla. 1st DCA 1994)(wife specifically listed child support as disputed issue in case management conference and filed support guideline worksheet). Compare, Todaro v. Todaro, 704 So.2d 138 (Fla. 4th DCA 1997)(objection at time issue raised); McCaleb v. Mathis, 459 So.2d 1162 (Fla. 2d DCA 1984)(not tried by implied consent based, in part, on counsel's statements).
The record in this case evidences that appellant tried the global issue of child support by implied consent. In addition to filing the child support guideline worksheet, the transcripts of the hearings in this case amply set out the issues contemplated and discussed by the parties during this litigation.
Appellee filed her pretrial memorandum on April 2, 2001, and listed "child support" as an issue to be resolved by the court. So did appellant. After appellant filed his motion for relief from judgment, a hearing was held on January 10, 2002. During that hearing, the court asked Doss, appellant's attorney, how he could allege that it did not have jurisdiction to hear the issue of child support when it was listed in both parties' pretrial memoranda. The judge stated:
It [child support] was in the pretrial memorandum in response to the Court's requirement for an establishment of the issues to be tried. So if child support was listed by both parties on your compliance with the pretrial order, why ever in the world are you arguing that I didn't have jurisdiction to address child support? (emphasis added)
Doss responded:
Because child support was listed on my pretrial compliance as being relative to the issue of modification of placement of the children. If there were no change in the placement of the children, there were no pleadings before the Court that would allow there to be modification of the child support.... (emphasis added)
The court stated:

I don't know how much more notice you can have than to put child support on your compliance with the pretrial order and then be surprised, and then if I took evidence, then the law is that the issue before the Court is automatically amended by the evidence which is introduced at the time of trial. My ruling has to be in accordance with the evidence.
At that same hearing, Doss advised the court that in March of 2000, Shepard, appellee's then attorney, sent him correspondence about an increase in child support. *755 Doss claimed he was "surprised" at that time.
In his closing argument, Doss offered the child support guideline worksheet to the court and the judge responded that he already had the child support worksheet, and took judicial notice of it. The worksheet contained the child support figures which the trial court found to be due in its recalculation of child support.
In his opening argument, Doss asked the court to ratify the mediation agreements and explained to the judge that:
[I]t [child support] was not decided [in mediation] simply because the attorneys needed to look at financial documents and do some of those things to try and work out support. That took us a while going around and around. We never got the issue of support finally decided. (emphasis added)
It is obvious from these comments that the global issue of child support was a contested issue during this case. As a practical matter, if the only issue contemplated by the parties was a reduction in child support for Ashley,[4] it would have been a simple matter to reduce the child support by one-third. There would have been no necessity to base it on current financial documents, and "going around and around."
Doss also specifically advised the court that recalculation was being requested when, in his opening comments, he stated "we are looking for child support to be recalculated ... assuming the court agrees with us" (emphasis added). He then explained that this was due to the change in primary residential custody of Ashley and the fact that appellant was seeking a change for Levy. In closing argument, Doss asked for "a recalculation of child support" with regard to any change of residence and stated,
And that is what the child support guidelines worksheet, which I submitted today is based on. And its based on income of present as testified to by Mr. Newberry.... And earnings of Ms. Newberry .... (emphasis added)
Doss also asked the court to ratify the mediation agreement entered into in 1999, and "to determine child support based on that time [1999] with basically making child support retroactive to the time Ashley went to live" with appellant. (emphasis added)
The rationale behind a due process violation, as suggested by the majority opinion, and a court's inability to consider issues not properly noticed, is that without notice, the other party is surprised and cannot be afforded a sufficient opportunity to be heard and present his case. See, e.g., Alexander v. Alexander, 683 So.2d 172, 173 (Fla. 1st DCA 1996). But in this case, the appellant pled and raised the issue of child support, even submitting the figures relied upon by the trial judge. He could hardly be surprised to discover that recalculation of child support would be global, not just for children which might reside with him.
I think the principles to be decided by this court are whether the child support guidelines and rules require a global recalculation of child support each time the issue is raised, and whether the Legislature intended parties to selectively limit and modify their child support obligations for individual children. I would answer the first question in the affirmative, and the second question with a resounding no.
Both the Legislature and the Florida Supreme Court, as evidenced by statutory law and rules of procedure, have signaled *756 that child support must be recalculated each time the issue is raised, and that it is a global or all-inclusive issue that is either before the court, or it is not. The result in this case violates the spirit and intent of the child support guidelines, and is not, I believe, what the Legislature or our supreme court intended when the act was passed and the rules promulgated.
NOTES
[1] It was acknowledged by counsel at oral argument that Levy now lives with Michael, leaving only Shayna with the mother.
[1] The parties agreed, after mediation, that their daughter Ashley would change her residence to live with appellant. Thus, he is entitled to relief after filing his modification petition. See Chattic v. Brooks, 827 So.2d 1044,(Fla. 3d DCA 2002)(payor parent must continue to make child support payments pursuant to provision of final judgment until he files a motion for modification and the motion is favorably acted upon).
[2] The objection referred to in the majority opinion occurred after the judge announced his findings and ruling in open court. Appellant's attorney stated he wanted to "object to a couple of things for the record." That is, appellant objected to the court's ruling and sought to preserve the record for appellate purposes. But in fact, appellant's counsel discussed the issue of child support and requested a recalculation several times during that hearing.
[3] She was representing herself pro se.
[4] Doss told the court that the starting point was "the original final judgment."